UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br>　　　　　　　Plaintiff,<br><br>　vs.<br><br>State of Minnesota; City of Minneapolis, Minnesota; City of St. Paul, Minnesota; Hennepin County, Minnesota; Keith Ellison, Attorney General of Minnesota, in his official capacity; Dawanna S. Witt, Hennepin County Sheriff, in her official capacity,<br>　　　　　　　Defendants. | Case No. 0:25-cv-03798 (ECT/JFD)<br><br>**HENNEPIN COUNTY DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS** |

## Introduction

The Complaint in this case contains exactly four paragraphs of factual allegations involving either Hennepin County or the Hennepin County Sheriff (together, "Hennepin Defendants"). Compl. ¶¶ 19, 71, 87-88. Taken together, these paragraphs merely establish that the Hennepin County Sheriff's Office ("HCSO") has a policy ("Administrative Directive 21-02" or "Directive") requiring federal immigration officials (like all law enforcement) to provide HCSO with a judicially signed warrant prior to HCSO holding an individual in custody at their behest and prior to HCSO notifying immigration officials of an individual's admittance or release. Against this thin factual backdrop, Plaintiff seeks to hold the Hennepin Defendants liable for a litany of claims, many of which have no discernable relationship to any conduct by the Hennepin Defendants.

1

Even concerning the limited claims related to the Directive, the Complaint falls well short of plausibly alleging a claim for relief. Based on its plain language, the Directive is lawful and not preempted. The federal statutes and regulation cited in the Complaint do not prohibit the adoption of the Directive; in fact, if they did so they would run afoul of the Tenth Amendment and raise significant Fourth Amendment questions. The Directive also treats federal law enforcement the same as other law enforcement, and it therefore raises no intergovernmental immunity concerns. In short, Plaintiff has failed to state a claim against the Hennepin Defendants, and they are entitled to dismissal with prejudice.

## **Background**[1]

Plaintiff filed the instant Complaint in the United States District Court for the District of Minnesota on September 29, 2025. ECF No. 1. In addition to the Hennepin Defendants, the Complaint is addressed to the State of Minnesota, the City of Minneapolis, the City of Saint Paul, and Minnesota Attorney General Keith Ellison, in his official capacity.

The Complaint is premised on the central allegation that each Defendant is violating federal law through various so-called "sanctuary" policies that allegedly interfere with the President's immigration policy agenda. *See, e.g.*, Compl. ¶¶ 2-9. The Complaint contains nine Counts—each of them an alleged violation of the Supremacy Clause of Article VI of the United States Constitution. Each Count is directed to one or more Defendants, and

---

[1] Allegations in the Complaint are taken as true only for the purposes of the instant motion to dismiss. These allegations remain unproven—and unadmitted—and they are included here only for reference.

broadly speaking, all are premised on one of two theories of violation of the Supremacy Clause: preemption (Counts I-V) or discrimination against the federal government (Counts VI-IX).

Counts I, II, and VI—which involve allegations about the Minnesota Constitution, a Minnesota Attorney General Advisory Opinion, and sections of Minnesota statute—are directed to "ALL DEFENDANTS," and therefore presumably embrace the Hennepin Defendants, although they do not specifically allege any conduct, or legislative or executive action, by the Hennepin Defendants. *See id.* at ¶¶ 90-107, 128-34.

The Hennepin Defendants are named specifically in Count V and Count IX, both of which involve allegations about the Directive. *See id* at ¶¶ 122-27, 143-46. The Directive states, in relevant part:

> The Hennepin County Sheriff's Office will not hold individuals in custody at the Adult Detention Center when the only documentation for that individual to be held in custody is a [DHS/ICE] Immigration Detainer. These detainers (1247G, 1247A, 1200, and 1205) are administrative warrants which are not signed by a judge and do not constitute judicial authority to hold an individual. ICE <u>will not</u> be notified of the admittance or release of any individual based on any of these detainers. If continued detention of an individual for ICE is authorized based on a judicially signed immigration warrant, ICE will be notified when they become the holding agency. Absent a judicially signed immigration warrant authorizing the continued detention of an individual for ICE, that individual will be released from custody when all local charges or other holds have been disposed of.

*Id.* ¶ 71. The Complaint alleges facts about a single individual that Plaintiff claims had to be apprehended in the community due to the Directive. Specifically, the Complaint asserts that, in 2024 and 2025, the Hennepin County Jail released that individual after his arrest (in 2024) and after posting bail in an unrelated criminal case (in 2025) without notifying

ICE, and that "[t]hree days [after the 2025 release], an ICE St. Paul Fugitive Operations team located and apprehended [the man] in St. Louis Park, Minnesota." *Id.* ¶ 87-88. The Complaint does not allege any other facts related to the Hennepin Defendants' conduct.

Counts III, IV, VII, and VIII involve claims only against other defendants.

The Complaint seeks declaratory and injunctive relief barring enforcement of the challenged "sanctuary" policies. *Id.* at pp. 32-34.

## Legal Standards

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require detailed factual allegations in a pleading, but it does require that a complaint state enough facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Mere "labels and conclusions," "formulaic recitation" of the legal elements for a cause of action, or "naked assertions" bereft of factual enhancement are insufficient. *Hamilton v. Palm*, 621 F.3d 816, 817–18 (8th Cir. 2010) (citing *Iqbal*, 556 U.S. at 678). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Arguments regarding Article III standing present a challenge to the Court's subject matter jurisdiction pursuant to Rule 12(b)(1). *Carlsen v. GameStop, Inc.*, 833 F.3d 903,

908 (8th Cir. 2016) ("[I]f a plaintiff lacks standing to sue, the district court has no subject-matter jurisdiction.") (internal quotations omitted). A "facial" challenge to standing occurs where a defendant's argument is directed only to the pleadings, and the Court "essentially applies the Rule 12(b)(6) standard," wherein the facts alleged in the complaint are assumed to be true. *Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 931 (D. Minn. 2024) (citing *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990) and *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). "To meet the burden to allege Article III standing, [a plaintiff] must show (1) an injury in fact that (2) is fairly traceable to the defendant's alleged conduct and (3) is likely to be redressed by a favorable court ruling. *Id.* (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). A plaintiff "must demonstrate standing for each claim that they press[.]" *TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021).

## Argument

**I. The United States lacks standing and fails to state a claim against the Hennepin Defendants based on its claims arising out of actions by the State of Minnesota.**

In Counts I, II, and VI, Plaintiff takes issue with Minnesota state law and interpretations of state law that it alleges interfere with federal immigration enforcement. Plaintiff's arguments are of dubious merit, but the Court need not even reach them when considering these Counts vis-à-vis the Hennepin Defendants. That is because Plaintiff does not even attempt to factually connect these Counts to the Hennepin Defendants.

5

**A.     The United States lacks standing and fails to state a claim against the Hennepin Defendants based on its claims arising out of Advisory Opinion 3a-20250206.**

Count I of the Complaint asserts that Minnesota Attorney General Advisory Opinion 3a-20250206 (hereafter, the "Opinion") and "Article I, section 10 of the Minnesota Constitution, as interpreted by the Opinion, conflict with, and create obstacles to, the enforcement of federal immigration law" and therefore violate the Supremacy Clause. Count I is addressed to "ALL DEFENDANTS," but proceeds largely without any factual differentiation between the different parties to this lawsuit. Regardless of the merits of Plaintiff's challenge to the Opinion, the Hennepin Defendants are not involved.

The Complaint quotes Article I, section 10 of the Minnesota Constitution as providing assurances against unreasonable searches and seizures and the issuance of properly supported search warrants. *See* Compl. ¶ 51. And the Complaint characterizes the Opinion as an interpretation of Article I, section 10 of the Minnesota Constitution that "prohibit[s] state and local law enforcement agencies from detaining aliens pursuant to immigration detainers." *Id*. ¶ 52.

As to standing, the United States, at a minimum, fails the traceability and redressability prongs of the analysis. Even assuming "injury in fact," that injury must still be "fairly traceable" to the defendant, such as where the defendants "'possess the authority to enforce the complained-of provision.'" *Alexis Bailly Vineyard, Inc. v. Harrington*, 931 F.3d 774, 779 (8th Cir. 2019) (quoting *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 958 (8th Cir. 2015)). Here, the Hennepin Defendants did not issue the Opinion, nor can they "enforce" an opinion addressing what is legal for local law

6

enforcement agencies (*i.e.*, themselves) to do. Nor would a finding of liability redress the purported injury, as the Hennepin Defendants have no power to rescind the Opinion. That alone is a sufficient reason to dismiss Count I against the Hennepin Defendants.

Even assuming standing, none of the allegations about the Opinion state a claim against the Hennepin Defendants. Nothing in the Complaint explains how *the Hennepin Defendants* are liable to Plaintiff because *the Minnesota Attorney General* has allegedly "prohibited" Minnesota's local law enforcement officials from engaging in certain activities. Plaintiff asserts that the Opinion has allegedly "caused many Minnesota localities to stop honoring ICE detainers" and "certain law enforcement agencies have advised ICE that they perceive it as a binding interpretation of the Minnesota Constitution." Compl. ¶ 54. But Plaintiff makes no effort to explain how it can bring a federal lawsuit against Hennepin County and its sheriff because some other, unidentified agencies "perceive" that the Minnesota Attorney General has ordered them to do something. Moreover, even if "many Minnesota localities" have "stop[ped] honoring ICE detainers" because of the Opinion, it is left entirely to conjecture how Hennepin County, alone among the 87 counties in this state, is liable for the Attorney General's Opinion. Indeed, HCSO's Directive, which Plaintiff challenges separately for the same reasons, was issued nearly four years before the Opinion. *Compare* Compl. ¶ 71 *with id.* ¶ 52. HCSO could not have "stop[ped] honoring ICE detainers" because of the Opinion, as HCSO already had a policy of requiring judicial warrants to detain people otherwise entitled to release.

Finally, Plaintiff's request for an injunction against all Defendants "enforcing the Opinion and Article I, section 10, as interpreted by the Opinion" cannot confer standing or

7

save its claim. As noted, the Hennepin Defendants have no power to enforce the Opinion or its interpretation of Article I, section 10, and, in any event, it is axiomatic that a judicial injunction should not be issued against a defendant if there is no valid legal claim against that defendant. *See United States v. Illinois*, 796 F.Supp.3d 494, 511 (N.D. Ill. 2025) ("Because Governor Pritzker has no enforcement power, the relief sought—an injunction prohibiting him from enforcing the challenged Policies—would have no practical effect and could not redress the injuries alleged.").

Count I should be dismissed with prejudice.

**B.     The United States lacks standing and fails to state a claim against Hennepin Defendants based on its claim arising out of Minnesota Statutes.**

For similar reasons, the Court should easily reach the same outcome – dismissal with prejudice – for Counts II and VI. Again, Plaintiff directs these counts against "ALL DEFENDANTS," asserting that Minnesota Statutes §§ 168.327, subdivision 6 and 171.12 subdivisions 7b(e), 11(c-d) (the "Statutes")[2] violate the Supremacy Clause. *See* Compl. ¶¶ 99-105, 128-34. But these Statutes concern the use of data by a state agency and its commissioner. *Id.* ¶ 55–58. According to the Complaint, the Statutes each impose

---

[2] Minn. Stat. § 171.12, subd. 7b(e) requires certification by requesters that data sought from MNDOT will not be used for civil immigration enforcement purposes or disclosed to related authorities. Minn. Stat. § 171.12, subd. 11(c-d) authorizes MNDOT to share data except for "immigration status data" with government entities, except for civil immigration enforcement purposes or otherwise to civil immigration enforcement authorities—without a valid search warrant or court order. Minn. Stat. § 168.327, subd. 6, concerns subscriber review and audit of MNDOT subscriptions services for compliance with certification required under Minn. Stat. § 171.12, subd. 7b(e).

8

limitations upon the release and use of driver's license data for civil immigration enforcement purposes. *Id*. Nothing in the Complaint explains why Hennepin County, which is not a state agency, nor why Sheriff Witt, who is not a state commissioner, are included under Counts II and VI. There are zero allegations in the Complaint that allege *any* relationship between the Hennepin Defendants and the Statutes, let alone the traceability or redressability required for standing or a violation of law required to state a claim. Thus, Plaintiff cannot pursue these facial challenges to state law against the Hennepin Defendants based on either a preemption (Count II) or intergovernmental immunity (Count VI) theory.

## II.     The United States fails to state a claim against the Hennepin Defendants based on the Directive.

Counts V and IX are the sole portions of the Complaint that challenge government action connected to the Hennepin Defendants—specifically the Directive. As discussed below, the Directive is not preempted by federal law, preemption would violate the Tenth Amendment (and raise significant Fourth Amendment concerns), and the Directive does not violate the intergovernmental immunity doctrine. Therefore, Counts V and IX also fail to state a claim, and the Hennepin Defendants are entitled to dismissal with prejudice.

### A.     The Directive is not preempted by federal law.

Under the Supremacy Clause, Congress may "pre-empt, *i.e.*, invalidate, a state law through federal legislation." *Oneok, Inc. v. Learjet, Inc.*, 575 U.S. 373, 376 (2015). Congress may do so via "express," "conflict," or "field" preemption. *See, e.g.*, *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018). But there are numerous limits

9

to the preemption power. Preemption must be based in the Constitution or valid federal law, rather than "some brooding federal interest." *Va. Uranium, Inc. v. Warren*, 587 U.S. 761, 767 (2019). Likewise, "even where Congress has the authority under the Constitution to pass laws requiring or prohibiting certain acts, it lacks the power directly to compel the States to require or prohibit those acts." *Murphy*, 584 U.S. at 472. Further, Courts do not assume "the historic police powers of the States" have been superseded "unless that was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)).

Here, the Complaint asserts conflict preemption of the Directive by 8 C.F.R. § 287.7(d) and 8 U.S.C. §§ 1373 and 1644. Compl. ¶¶ 123-26. Subject to the limitations on preemption discussed above, "[c]onflict preemption voids state laws when either (1) 'compliance with both federal and state regulations is a physical impossibility,' or (2) 'the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Unbehaun v. Minnesota Energy Res. Corp.*, 736 F. Supp. 3d 665, 674 (D. Minn. 2024). Plaintiff does not allege the former scenario of impossibility, instead focusing on the supposed "obstacle" to federal law created by the Directive. *See* Compl. ¶¶ 123-125. As discussed below, the regulation and statutes cited in the Complaint do not prohibit local law enforcement agencies from adopting a policy akin to the Directive, and, if they did, they themselves would violate the Tenth Amendment and raise Fourth Amendment concerns. Therefore, the Directive is not preempted and the Hennepin Defendants are entitled to dismissal.

### 1. *There is no conflict preemption because administrative detainers are permissive requests that do not impose obligations on local law enforcement.*

In general, 8 C.F.R. § 287.7 authorizes a federal immigration official to issue "detainers," which "advise another [federal, state, or local] law enforcement agency that [the immigration official] seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien." Here, Plaintiff alleges that the Directive is conflict preempted by 8 C.F.R. § 287.7(d), a specific subsection entitled "Temporary detention at Department request." It is not.

Immigration detainers do not impose obligations on anyone other than the federal officials they specifically regulate. *United States v. California*, 921 F.3d 865, 887 (9th Cir. 2019) ("[N]either an administrative warrant issued by federal authorities nor any other provision of law identified by the United States *compels* any action by a state or local official."). In fact, "[a]ll Courts of Appeals to have commented on the character of ICE detainers refer to them as 'requests' or as part of an 'informal procedure.'" *Galarza v. Szalczyk*, 745 F.3d 634, 640 (3d Cir. 2014) (collecting cases across the First, Second, Fourth, Fifth, and Sixth Circuit Courts of Appeals); *see also City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1241 (9th Cir. 2018). Even ICE agrees, when convenient. *See Gonzalez v. United States Immigr. & Customs Enf't*, 975 F.3d 788, 804 (9th Cir. 2020) (noting the "Government also argues that a detainer merely requests detention and is not a command"). Simply put, "[d]etainers are requests, not requirements." *Illinois*, 796 F.Supp.3d at 528.

11

Here, the Directive embodies HCSO's lawful choice to require federal immigration officials to provide a judicially signed warrant prior to detaining an individual on immigration offenses. This choice does not conflict but in fact is perfectly consistent with 8 C.F.R. § 287.7(d), which by its plain language is a "request." And the simple fact that the Directive may express a policy around local detention that is not aligned with Plaintiff's current immigration enforcement goals does not mean that the Directive is preempted. *See Williams v. BHI Energy I Power Servs., LLC*, No. 021CV1186KMMDTS, 2023 WL 5403796, at *13 (D. Minn. Aug. 24, 2023) ("For a state law to be preempted, it is not enough for a party to 'rest on a supposition (or a wish)' that a conflict 'must be in there somewhere.'") (quoting *Va. Uranium*, 587 U.S. at 767).

### 2. Even if 8 C.F.R. § 287.7(d) was ambiguous (it is not), it would not preempt local decisions about detentions in local facilities.

Even if the Court concludes, contrary to the authority cited above, that 8 C.F.R. § 287.7(d) is ambiguous as to whether it imposes a federal cooperation *requirement* on local authorities, the Court should nevertheless conclude that the regulation does not preempt the Directive. That is because "[w]hen Congress legislates in a field 'which the States have traditionally occupied ... we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" *Minnesota Chamber of Com. v. Choi*, 707 F. Supp. 3d 846, 866 (D. Minn. 2023) (quoting *Santa Fe Elevator Corp.*, 331 U.S. at 230). This principle is at least as applicable in the context of a federal regulation that has not been approved by Congress.

As alleged, the Directive provides guidance on who the County may continue to detain after "local criminal charges and holds have been disposed of." Compl. ¶ 71. Few things more squarely fall within the historic police powers of the state. *United States v. Lopez*, 514 U.S. 549, 564 (1995) (observing that criminal law enforcement is an area "where States historically have been sovereign"). The Court should not find that 8 C.F.R. § 287.7(d) preempts the Directive. *See Bond v. United States*, 572 U.S. 844, 848 (2014) ("Because our constitutional structure leaves local criminal activity primarily to the States, we have generally declined to read federal law as intruding on that responsibility, unless Congress has clearly indicated that the law should have such reach.").

The doctrine of constitutional avoidance further supports construing any ambiguity as to 8 C.F.R. § 287.7(d) against Plaintiff. "Statutes (including regulatory statutes) should be read, if possible, to comport with the Constitution, not to contradict it." *FCC v. Consumers' Research*, 606 U.S. 656, 691 (2025). As discussed below in Section II.B, *infra*, any interpretation of 8 C.F.R. § 287.7(d) to require the County to continue to detain based on a civil immigration detainer implicates substantial Tenth Amendment and Fourth Amendment concerns and, therefore, should be avoided if possible.

### 3. Because 8 C.F.R. § 287.7(d) and 8 U.S.C. §§ 1373, 1644 do not regulate private actors, they lack preemptive power.

A valid preemption "is based on a federal law that regulates the conduct of private actors, not the States." *Murphy*, 584 U.S. at 479; *see also Ocean County Board of Comm'rs v. Attorney General of New Jersey*, 8 F.4th 176, 181–82 (3d Cir. 2021) (concluding that a "federal statute that does not regulate private actors cannot serve as a basis for

13

preemption"). Therefore, 8 U.S.C. §§ 1373(a) and 1644 cannot preempt the Directive because neither regulates the conduct of private actors.

Section 1373 (in relevant part) prohibits any "Federal, State, or local government entity or official" from restricting any other such entity or official from sending or receiving "information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373. Section 1644 features nearly identical language, in relevant part. 8 U.S.C. § 1644. 8 C.F.R. § 287.7(d), meanwhile, specifically applies to "criminal justice agenc[ies]." 8 C.F.R. § 287.7(d). Thus, these provisions "regulate only state and local governments and do not, in any way, regulate private actors." *Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 372 (D.N.J. 2020); *see also Illinois*, 796 F.Supp.3d at 521 ("As a provision that addresses information sharing between government actors, § 1373 doesn't create or restrict the rights of any private actor"); *Oregon v. Trump*, 406 F. Supp. 3d 940, 972 (D. Or. 2019) ("In particular, the provisions create no rights or restrictions applicable to *private* actors; rather, by their terms, Sections 1373 and 1644 affect only state and local government 'entit[ies]' and 'official[s].'"); *City of Phila. v. Sessions*, 309 F. Supp. 3d 289, 329 (E.D. Pa. 2018) (Section 1373 "can[not] be best read as regulating private actors" because it instead "regulate[s] state and local government entities and officials").[3]

---

[3] In similar lawsuits in other jurisdictions, Plaintiff has argued that 8 U.S.C. §§ 1373(a) and 1644 do regulate private actors because, the United States has asserted, they regulate aliens. This argument is meritless and has been rejected. *See Illinois*, 796 F.Supp.3d at 521-22. It cannot seriously be contended that 8 C.F.R. § 287.7(d), or §§ 1373(a) and 1644, govern the conduct of anyone other than government entities. *See Murphy*, 584 U.S. at 479-80 ("[T]here is simply no way to understand the provision prohibiting state authorization [of sports gambling] as anything other than a direct command to the States").

As a result, these provisions are not capable of preempting the Directive. *See Illinois*, 796 F.Supp.3d at 524-25 (concluding that "§§ 1373 and 1644 are not valid preemptive provisions").

### 4. The Directive does not conflict with Sections 1373 or 1644 because it does not restrict the sending of information regarding citizenship or immigration status to federal officials.

Even if Sections 1373 and 1644 held preemptive power (they do not), there is no conflict because the Directive does not prevent compliance with these statutes. The third sentence of the Directive states that "ICE will not be notified of the admittance or release of any individual based on [civil immigration] detainers." Compl. ¶ 71. The Complaint alleges that this language "restricts the sending of immigration-status information to DHS, contrary to the text of §§ 1373 and 1644." *Id*. ¶ 125. This allegation is contradicted by the plain language of the Directive. *See id*. ¶ 71. The Directive does not address the sharing of immigration-status information at all; instead, it addresses the sharing of information concerning the admittance or release of individuals from criminal custody of the County. This perhaps explains why the Complaint does not allege express preemption as to Count V (in contrast to the allegations as to Count II); that would require a "capacious" interpretation of those statutes to cover not just information regarding "citizenship or immigration status, lawful or unlawful," but also additional information not mentioned, a reading that has been universally rejected by the courts. *See, e.g., Illinois*, 796 F.Supp.3d at 515-16 (collecting cases); *see also Consumers' Research*, 606 U.S. at 691 (discussing doctrine of constitutional avoidance).

Nor does the Complaint contain any facts sufficient to plausibly allege how the Directive would otherwise pose an obstacle to compliance with 8 U.S.C. §§ 1373 or 1644. As explained above, the information-sharing addressed by Directive and the information-sharing addressed by 8 U.S.C. §§ 1373 and 1644 concern distinct conduct, so there is no reason that an official could not comply with both. Of course, the DOJ may have an interest in seeking custody and release information in addition to immigration-status information. But, absent a statutory mandate, that is nothing more than a "brooding federal interest" too inchoate to support preemption. *Va. Uranium*, 587 U.S. at 767. Rather, the Directive represents a permissible choice to refrain from participation in civil immigration enforcement. *See California*, 921 F.3d at 890 ([T]he choice of a state to refrain from participation cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal.").

> **B.    Even if 8 C.F.R. § 287.7(d) or 8 U.S.C. §§ 1373 and 1644 prohibited the Directive (they do not), they would be unconstitutional under the Tenth Amendment and raise Fourth Amendment concerns.**

Finally, if 8 C.F.R. § 287.7(d) or Sections §§ 1373 and 1644 in fact prohibited HCSO from adopting the Directive (they do not), then they themselves would be unconstitutional under the Tenth Amendment and raise Fourth Amendment concerns.

"[T]he Federal Government may not compel the States to implement, by legislation or executive action, federal regulatory programs." *Printz v. United States*, 521 U.S. at 925; *see also Murphy*, 584 U.S. at 471 ("[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States."); *id.* at 455 ("Congress may not simply 'commandeer the legislative process of the States by

16

directly compelling them to enact and enforce a federal regulatory program.'"). As such, numerous courts have concluded that anti-commandeering principles prevent federal preemption where states decline to facilitate or partake in federal immigration enforcement. *See, e.g.*, *California*, 921 F.3d at 890 (finding that even state restrictions on cooperation that "inevitably frustrate[]" federal immigration enforcement are not preempted by federal immigration laws because the state "retains the right of refusal" with respect to those laws under the Tenth Amendment); *McHenry Cnty. v. Raoul*, 44 F.4th 581, 592 (7th Cir. 2022) (same); *Galarza*, 745 F.3d at 644 (cooperation with federal immigration enforcement is permissive, and "to hold otherwise, would violate the anti-commandeering principles inherent in the Tenth Amendment"); *Illinois*, 796 F.Supp.3d at 523 ("[I]f the State, County, and City cannot control whether and how their employees [cooperate] with the federal government, they cannot affirmatively opt-out of enforcing federal immigration laws."). Requiring the Hennepin Defendants to hold detainees on behalf of the federal government based on administrative warrants or otherwise assist federal authorities in civil immigration enforcement (including through employees who, as a direct result of their roles and responsibilities, have information of interest to immigration authorities) would be inconsistent with those principles.

Furthermore, any interpretation of 8 C.F.R. § 287.7(d) or 8 U.S.C. §§ 1373 and 1644 that would require the Hennepin Defendants to detain individuals in service of federal immigration enforcement also risks running afoul of the Fourth Amendment. The Directive merely requires a judicial warrant before an individual will be kept in county detention on an immigration detainer request. This policy is consistent with decisions by courts of this

17

district that have explicitly concluded that a county's continued detention of an individual solely on the basis of an immigration detainer request from ICE represents a violation of the individual's rights under the Fourth Amendment. *See Orellana v. Nobles Cnty.*, 230 F. Supp. 3d 934, 944-46 (D. Minn. 2017) (individual's warrantless arrest and detention by county officials pursuant to 8 C.F.R. § 287.7(d), based on ICE's contention that the individual was an alien subject to removal and nothing more, violated individual's clearly established Fourth Amendment rights); *Parada v. Anoka Cnty.*, 332 F. Supp. 3d 1229, 1243 (D. Minn. 2018) (same). The Directive cannot be preempted by a federal law or regulation that would require the Hennepin Defendants to violate individuals' Fourth Amendment rights.

## C. The Directive does not discriminate against the federal government.

Plaintiff also alleges that the Directive violates the "intergovernmental immunity" doctrine because it allegedly "singles out federal immigration officials and entities … for unfavorable and uncooperative treatment" and "treats federal immigration officials and entities worse than private individuals and other government officials and entities." Compl. ¶ 145. The doctrine of "intergovernmental immunity" applies where state laws are found to unlawfully discriminate against the federal government or its contractors, by singling them out for less favorable treatment on some basis related to their federal governmental status. *United States v. Washington*, 596 U.S. 832, 833 (2022). In other words, a state cannot treat comparable classes of federal and state employees differently, absent "significant differences between the two classes justify[ing] the differential treatment." *Dawson v. Steager*, 586 U.S. 171, 176 (2019).

Plaintiff's claim that the Directive discriminates against the federal government fails for the straight-forward reason that the Directive, by Plaintiff's own allegation, gives no comparable state authority, or indeed anyone at all, more favorable treatment than federal officers. The Directive states only that "ICE will not be notified of the admittance or release of any individual based on any … [federal immigration] detainers" absent a judicial warrant and that ICE must obtain a "judicially signed immigration warrant" before an individual will be held by the county in the absence of an independent criminal basis for doing so. Compl. ¶ 71. In short, nothing about the Directive suggests, let alone states, that an agency or official other than ICE would be notified of the admittance or release of any individual based on the existence of an immigration detainers; and nothing about the Directive suggests, let alone states, that an individual would be held for any other agency or official absent a judicial warrant. Thus, the discrimination claim fails because "[t]he State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Washington v. United States*, 460 U.S. 536 544–45 (1983).

Plaintiff's intergovernmental immunity claim should be dismissed with prejudice.

## Conclusion

For the foregoing reasons, Defendants Hennepin County and Hennepin County Sheriff Dawanna Witt respectfully request that this Court dismiss all claims against them with prejudice. Counts I, II, and VI should be dismissed for lack of Article III jurisdiction or, alternatively, failure to state a claim. Counts V and IX should be dismissed for failure to state a claim.

                                        Respectfully submitted,

                                        MARY F. MORIARTY
                                        Hennepin County Attorney

Dated:  January 7, 2026              *s/  Sarah McLaren*
                                        SARAH MCLAREN (0345878)
                                        Sr. Assistant County Attorney
                                        LEAF MCGREGOR (0389140)
                                        SPENCER DAVIS-VANNESS (0402894)
                                        Assistant County Attorneys
                                        300 South Sixth Street, A-1200
                                        Minneapolis, MN  55487
                                        (651) 348-5532
                                        Sarah.McLaren@hennepin.us
                                        Leaf.McGregor@hennepin.us
                                        Spencer.Davis-VanNess@hennepin.us

                                        *Attorneys for Defendants Hennepin County, Minnesota and Dawanna S. Witt, Hennepin County Sheriff, in her official capacity*