UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

    vs.

State of Minnesota; City of Minneapolis, Minnesota; City of St. Paul, Minnesota; Hennepin County, Minnesota; Keith Ellison, Attorney General of Minnesota, in his official capacity; Dawanna S. Witt, Hennepin County Sheriff, in her official capacity,

        Defendants.

Civ. No. 25-3798 (ECT/JFD)

**REPLY MEMORANDUM IN SUPPORT OF STATE DEFENDANTS' MOTION TO DIMSISS**

## INTRODUCTION

The United States' opposition fails to meet the substance of the State's arguments, ignores dozens of on-point cases, heavily relies on abrogated case law, and is rife with inaccuracies. The State respectfully request that the Court dismiss the complaint.

## ARGUMENT

### I.    THE UNITED STATES'S DECLARATION IS IMPROPER.

Under Rule 12(b)(1) a facial attack, which is what Minnesota asserts here, a district court cannot consider materials beyond the pleadings. *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). The Court must therefore reject the United States's lengthy declaration.

Even if the Court considered it, the declaration proves nothing. Nonparties' alleged interference with immigration enforcement is irrelevant to the issues raised in the State's

motion to dismiss. The United States has not established plausible causality between Defendants' policies and these actions. Defendants could, e.g., submit ample evidence the "interference" is caused not by "sanctuary policies" but by DHS's aggressive tactics.

## II.    MINNESOTA IS NOT BOUND BY AN EXPECTATION OF COOPERATION.

A persistent theme of the United States's opposition is that Congress permits Minnesota to prosecute noncitizens for state crimes and in return for its expected immigration enforcement cooperation. (ECF 51 at 1, 4, 6, 22, 24, 32, 45, 46.) But Minnesota's sovereignty allows it to prosecute noncitizens for violating state criminal law, not federal permission. *See United States v. Morrison*, 529 U.S. 598, 618 (2000). And states are not bound by an "expectation" of cooperation. *See United States v. Illinois*, 796 F. Supp. 3d 494, 528 (N.D. Ill. 2025) ("While the INA may reflect Congress's 'hope[] or expect[ation] that States would cooperate, . . . States are not bound by that hope or expectation.'"); *id.* at 536 n.18; *United States v. California*, 921 F.3d 865, 891 (9th Cir. 2019).

## III.    THE AG OPINION IS NOT JUSTICIABLE.

The State cited eighteen cases holding nonbinding legal opinions nonjusticiable. (ECF 31 at 9 n.6.) The United States mentions none of them. Nor has it identified any case finding a nonbinding opinion justiciable.

Instead, it argues the Minnesota Attorney General could sue a municipality that violates the opinion. That assertion's validity is questionable; regardless, it shows nothing about this dispute. A plaintiff must show *it* has standing and *its* claims are ripe, not that a *defendant* could sue a hypothetical nonparty.

2

Relying on *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. 367 (2024), the United States claims standing because municipalities comply with the AG Opinion. (ECF 51 at 16). But *FDA* held the plaintiffs lacked standing and noted that a plaintiff "cannot rely on speculation about the unfettered choices made by independent actors not before the courts." *Id.* at 383 (quotation omitted).

It is speculative whether localities do not honor detainers because of the nonbinding AG Opinion or, for example, because of preexisting case law or their own policy choices. It is equally speculative that they would honor detainers if this Court "repealed" the opinion because caselaw holding detainer compliance unlawful would persist. *See Simon v. E. Ky. Welfare Rts. Org.,* 426 U.S. 26, 42–44 (1976).

The United States argues that if the AG Opinion is nonjusticiable, Count One instead challenges the Minnesota Constitution. But this would require determining whether the Minnesota Constitution in fact prohibits detainer compliance.[1] In 2019, the United States argued the opposite. (Second Carter Decl. Ex. 1 at 16–23.[2]) Here, it studiously avoids conceding the point: it takes pains to challenge only "the Opinion" and seeks declarations "that the Opinion" and the Minnesota Constitution "*as interpreted by the Opinion*" are "invalid." (Compl. ¶¶ 90–98 (emphasis added); *see also* ECF 51 at 15 (requesting "invalidating the Opinion" and "[e]njoining any enforcement of the Opinion").

---

[1]    That issue would be appropriate for *Pullman* abstention or certification. *See Farms v. Kuehl Poultry LLC*, 2020 WL 2490048, at *5 (D. Minn. May 14, 2020).

[2]    The Court may consider the United States's prior filings on this motion. *Graham v. Catamaran Health Sols. LLC,* 940 F.3d 401, 410 n.1 (8th Cir. 2017).

Finally, the United States relies on *United States v. Missouri* for the proposition that withdrawing assistance creates standing. But *Missouri* involved a statute, not an advisory opinion. 114 F.4th 980 (8th Cir. 2024). Its reasoning does not apply here.

## IV. FEDERAL LAW DOES NOT PREEMPT MINNESOTA LAW REGARDING ARRESTS WITHOUT PROBABLE CAUSE.

### A. There Is No Conflict Between State and Federal Law.

The AG Opinion states that immigration detainers do not provide the probable cause that local officials need to make arrests. But detainers only request detention, they don't mandate it. As such, there is (1) no conflict preemption because compliance with both state and federal law is possible, and (2) no obstacle preemption because federal law cannot preempt a state's decision not to participate in immigration enforcement when federal law provides that option. *See Illinois*, 796 F. Supp. 3d at 531 ("[T]he choice of a state . . . to refrain from participation cannot be invalid under the doctrine of obstacle preemption where, as here, it retains the right of refusal.").

The State cites myriad cases holding detainers are requests. (ECF 31 at 22–23 & n.13.) The United States does not cite a single case holding detainers are mandatory.[3] Instead, it claims that 8 C.F.R. § 287.7 authorizes two types of detainers: § 287.7(a) detainers,

---

[3]   The United States makes several inaccurate statements. *Nielsen v. Preap*, 586 U.S. 392, 396–99 (2019), and *Demore v. Kim*, 538 U.S. 510, 518–21 (2003), do not discuss a preference for "custody transfers" or state federal agents must detain noncitizens "immediately upon their release," (*see* ECF 4–5, 22), only that Congress provided for mandatory detention for certain noncitizens in removal proceedings. *Arizona v. United States*, 567 U.S. 387, 410 (2012), says nothing about "[a]t-large arrests . . . undermin[ing] Congress' objective[s.]" (ECF 51 at 9.) And the cited news article does not link an increase in at-large arrests to "sanctuary policies." (ECF 51 at 9 n.6.)

which are "voluntary 'requests,'" and § 287.7(d) detainers, which mandate detention for up to 48 hours. (ECF 51 at 23, 25.) Nothing in the regulation's text supports this reading. § 287.7(a) is titled "Detainers in general," and it applies to all detainers. § 287.7(d), as the United States argued in 2019, "describe[es] [a] request for continued detention." (Second Carter Decl. Ex. 1 at 3.) Nothing suggests the "detainers" in the two subsections are different things.

Until recently, ICE "consistently construed detainers as requests rather than mandatory orders." *Galarza v. Szalcyzk*, 745 F.3d 634, 641 (3d Cir. 2014). And tellingly, detainers themselves state "**IT IS REQUESTED THAT YOU:** Maintain custody of the subject . . . ." *See* Form I-247, https://www.ice.gov/doclib/secure-communities/pdf/immigration-detainer-form.pdf.[4] And, contrary to the United States' arguments, several courts have held that states can prohibit honoring detainers. *See Illinois*, 796 F. Supp. 3d at 526–29 (upholding statute barring compliance with detainers); *California*, 921 F.3d at 886–888 (upholding statute prohibiting transfers to immigration authorities without judicial warrants).

Finally, the United States seems to concede detainers are voluntary but argues States may not "prevent or deter voluntary cooperation[.]" (ECF 51 at 26 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).) But *Hines* involved a Pennsylvania noncitizen registration scheme that "affirmatively disrupted federal operations." *California*, 921 F.3d at 888–89 & n.14. It says nothing about state laws that decline to assist federal officials. *See id.* at 889.

---

[4]    The parties agree that the Court may take judicial notice of public records. (ECF 51 at 7 n.4.)

**B.      Requiring Officials to Detain Individuals Violates the Tenth Amendment.**

The federal government would violate the Tenth Amendment by requiring local officials to detain individuals. *See Illinois*, 796 F. Supp. 3d at 531–33, *California*, 921 F.3d at 888–91. The United States concedes it may not "conscript[] state officials to enforce a federal regulatory program." (ECF 51 at 44.) But that is exactly what mandatory detainers would do.

None of the United States's arguments work. It claims unquestioned immigration authority, (ECF 51 at 44), but Minnesota is not impeding immigration law, it is just not assisting. *See California*, 921 F.3d at 888 ("[R]efusing to help is not the same as impeding.").

Relying on *City of New York v. United States*, 179 F.3d 29, 35 (2d Cir. 1999), the United States contends the Tenth Amendment cannot be used as "a sword" to frustrate federal programs. Again, the United States conflates noncooperation with impediment, but its argument also relies on bad caselaw: The Supreme Court abrogated *City of New York* in *Murphy v. NCAA*, 584 U.S. 453 (2018). *See New York v. DOJ*, 343 F. Supp. 3d 213 (S.D.N.Y. 2018), *rev'd on other grounds*, 951 F.3d 84 (2d Cir. 2020) ("*City of New York* cannot survive . . . *Murphy*."); *City of Chicago v. Sessions*, 321 F. Supp. 3d 855, 873 (N.D. Ill. 2018), *aff'd*, 961 F.3d 882 (7th Cir. 2020) ("*Murphy*'s holding deprives *City of New*

*York* of its central support"); *United States v. California*, 314 F. Supp. 3d 1077, 1108 (E.D. Cal. 2018), *aff'd in part & rev'd in part*, 921 F.3d 865 (9th Cir. 2019).[5]

## V.   MINNESOTA LAW DOES NOT PROHIBIT § 1357(G) AGREEMENTS.

The AG Opinion did not opine on § 1357(g) opinions, yet the United States argues it "prohibit[s] or materially discourage[s]" such agreements. As explained above, the United States lacks standing to pursue this theory because the AG Opinion is silent on these issues, and it could not have caused this "injury."

The United States contends § 1357(g) agreements serve no purpose if local officials cannot hold persons on detainers even under an agreement. (ECF 51 at 28–29.) But the AG Opinion reserved opinion on that issue. AG Opinion at 7 n.9. That was discussed in a later opinion not at issue here. *See* Minn. Att'y Gen. Advisory Op. 3a-390a6 (Dec. 12, 2025).[6] Regardless, even the December 2025 opinion does not render § 1357(g) agreements point-less because they serve several purposes, including permitting officials to "investigate," "gather evidence, and prepare Notices to Appear." (ECF 51 at 28, 30).

Most importantly, states can lawfully prohibit § 1357(g) agreements, so the United States's arguments would fail even if the AG Opinion were binding and had prohibited such agreements. *See Cnty. of Ocean v. Grewal*, 475 F. Supp. 3d 355, 382–83 (D.N.J. 2020)

---

[5]     Contrary to the United States' assertion, Minnesota does not maintain that it could ignore writs of habeas corpus or judicial warrants, neither of which involves holding per-sons without probable cause.

[6]     The United States wrongly claims the December opinion "acknowledged that the February Opinion had prompted confusion and caused some agencies to curtail coopera-tion." (ECF 51 at 7.)

7

(upholding ban); *California*, 921 F.3d at 887 (federal law does not "prevent states from regulating *whether* their localities cooperate"); *see also McHenry Cnty. v. Raoul*, 44 F.4th 581, 586–92 (7th Cir. 2022).

## VI.   FEDERAL LAW DOES NOT PREEMPT MINNESOTA'S DRIVER'S LICENSE LAWS.

### A.   Sections 1373 and 1644 Cannot Preempt State Law Because They Do Not Regulate Private Actors.

To preempt state law, a federal statute must "be best read as one that regulates private actors," not state governments. *Murphy*, 584 U.S. at 477. 8 U.S.C. § 1373[7] bars state and local governments from prohibiting sharing immigration status information with federal officials. Each of the many courts to address this issue has "uniformly found" that § 1373 does not regulate private actors. *Illinois*, 796 F. Supp. 3d at 520 (collecting cases).

The United States unleashes a blunderbuss of arguments that all founder. It contends that anticommandeering only prohibits federal laws compelling state action, but *Murphy* eliminated any distinction between laws "commanding 'affirmative' action" and those imposing "prohibition[s]" on states. *Murphy*, 584 U.S. at 474–75. The United States relies on *City of New York v. United States* for this point, but, as noted above, that case was abrogated by *Murphy*.

Without explanation, the United States argues § 1373 in fact regulates noncitizens. But § 1373(a) applies to "Federal, State, or local government entit[ies] or official[s]." § 1373(a). "[T]here is no way to read § 1373 as regulating anyone other than States and their political subdivisions." *Illinois*, 796 F. Supp. 3d at 522.

---

[7]   The United States does not dispute that §§ 1373 and 1644 can be analyzed together.

Next up, the United States claims an anticommandeering exception that permits it to compel states to provide information.[8] (ECF 51 at 48–49 (citing *Printz v. United States*, 521 U.S. 898, 918 (1997).) First, § 1373 is "more than just an information-sharing provision" because it "prohibits certain rule making by state policymakers." *City of Chi.*, 321 F. Supp. 3d at 872. Second, *Printz* did not recognize "information-sharing laws . . . as an exception," it "observed [they] were unlike the statute at issue and declined to consider whether that difference was constitutionally significant." *Illinois*, 796 F. Supp. 3d at 524 (internal citation omitted). Lower courts have found no exception. *See id.*; *Cnty. of Ocean*, 475 F. Supp. 3d at 378 n.21; *City of Philadelphia v. Sessions*, 309 F. Supp. 3d 289, 330–31 (E.D. Pa. 2018), *aff'd in part & rev'd in part*, 916 F.3d 276 (3d Cir. 2019); *City of Chi.*, 321 F. Supp. 3d at 871–72.

The United States also argues § 1373 represents a more "core federal power" than the gambling law in *Murphy*. (ECF 51 at 49.) That is wrong,[9] but to preempt state law a federal law must regulate private actors regardless of how "core" it is to Congress's powers. *See Murphy*, 584 U.S. at 477. There was no suggestion in *Murphy* that Congress could not regulate gambling. *See id.* at 496 n.4 (Gisnburg, J., dissenting).

---

[8]    *Haaland v. Brackeen*, 599 U.S. 255 (2023), does not support this argument because § 1373 is not an "ancillary recordkeeping requirement[] related to state-court proceedings[.]" *Id.* at 291.

[9]    "[C]onspicuously absent from the list of powers given to Congress is the power to issue direct orders to the governments of the States." *Murphy*, 584 U.S. at 471.

Finally, the United States wrongly claims the Second Circuit "rejected . . . that *Murphy* invalidated Section 1373." (ECF 51 at 49 (citing *New York v. DOJ*, 951 F.3d 84, 113 (2d Cir. 2020).) *DOJ* considered whether the federal government could require states to certify § 1373 compliance to receive federal grants and declined to decide whether § 1373 preempts state laws. *DOJ*, 951 F.3d at 124 n.27. Moreover, the United States' contention that anticommandeering does not apply to obstacle preemption or intergovernmental immunity has been squarely rejected.[10] 584 U.S. at 479 ("[E]very form of preemption is based on a federal law that regulates the conduct of private actors, not the States."); *see also California*, 921 F.3d at 891; *Illinois*, 796 F. Supp. 3d at 535–36 (same).

### B.   Any Preemption Would Be Limited to Immigration Status Data.

If they had preemptive effect, §§ 1373 and 1644 would preempt very little. They are limited to "information regarding the citizenship or immigration status, lawful or unlawful, of any individual." 8 U.S.C. § 1373(a). The United States argues that encompasses addresses and release dates. (ECF 51 at 35–36.) "This issue has been treated extensively by other courts. Without exception, each has rejected the United States's capacious reading of § 1373." *Illinois*, 796 F. Supp. 3d at 516 (collecting cases).

An address "says nothing about a person's citizenship or immigration status." *Id.* at 517. If addresses "fell within the scope of information 'regarding' citizenship or immigration status, it's difficult to see where it would end." *Id.* And release dates may bear on when

---

[10]   The case relied on was decided 77 years before *Murphy*. (ECF 51 at 49 (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941).)

a noncitizen may be removed but "cannot be considered 'information regarding' their immigration status." *Id.*

Because the statute is clear, there is no need to look further. *See Stursberg v. Morrison Sund PLLC*, 112 F.4th 556, 564 (8th Cir. 2024). Regardless, "[t]he structure and legislative history of § 1373 support the same conclusion." *Illinois*, 796 F. Supp. 3d at 517. Sections 1373(a) and (c) are worded differently, but "there is too little daylight between '[immigration] status information' and information 'regarding' information status to interpret this semantic difference as sanctioning the United States's broad reading of § 1373(a)." *Id.*; *see also California*, 921 F.3d at 892.

The United States omits important language from the congressional report it quotes: the report says § 1373 will facilitate communication of "information regarding the immigration status of an alien *or* the presence, whereabouts, or activities of illegal aliens." H.R. Rep. No. 104-725, at 383 (emphasis added). "'[T]he fact that the report distinguished between the two categories' suggests that they are non-overlapping." *Illinois*, 796 F. Supp. 3d at 518 (quoting *California*, 921 F.3d at 892 n.18.). Reading § 1373 to include "presence, whereabouts, and activities" would "eviscerate the limitation it clearly spells out: that information must at least relate to citizenship or immigration status." *Id.*

The United States then argues state laws outside § 1373's narrow scope are nevertheless impliedly preempted. (ECF 51 at 36–38.) But an express preemption clause "implies that matters beyond that reach are not pre-empted." *Couser v. Shelby Cnty.*, 139 F.4th 664, 672 (8th Cir. 2025); *see also Chapman v. Lab One*, 390 F.3d 620, 627 (8th Cir. 2004).

11

"[T]he purpose of Congress is the ultimate touchstone in every pre-emption case." *Wyeth v. Levine*, 555 U.S. 555, 565 (2009). And the statutory language "necessarily contains the best evidence of Congress' pre-emptive intent." *Dan's City Used Cars, Inc. v. Pelkey*, 569 U.S. 251, 260 (2013). The United States cannot use "obstacle preemption" to expand narrow statutory text into a rule encompassing practically any information pertaining to noncitizens. Regardless, the United States's "obstacle preemption" argument focuses on release dates, not driver's license info. It does not explain how withholding driver's license info imposes an "obstacle" to § 1373's objectives. (ECF 51 at 37–38.)

## VII.   THE UNITED STATES'S INTERGOVERNMENTAL IMMUNITY CLAIMS FAIL.

Minnesota does not unlawfully discriminate against federal employees because there are no state employees comparable to immigration officials that are treated more favorably. The United States rejects the need for a comparator but cites no case supporting that argument. *See United States v. Washington*, 596 U.S. 832, 839 (2022) (state law treated federal workers differently than similarly situated state and private workers); *North Dakota v. United States*, 495 U.S. 423, 438 (1990) (state law treating federal government *more* favorably does not unlawfully discriminate); *Dawson v. Steager*, 586 U.S. 171 (2019) (discussing 4 U.S.C. § 111, not intergovernmental immunity).

"Intergovernmental immunity attaches only to state laws that discriminate against the federal government and burden it in some way." *California*, 921 F.3d at 880. The remainder of the United States's cases involved laws that burdened the federal government or its contractors. *See United States v. King County*, 122 F.4th 740, 756 (9th Cir. 2024) (discussing law that "effectively grants King County the 'power to control' ICE's

transportation and deportation operations"); *Boeing Co. v. Movassaghi*, 768 F.3d 832 (9th Cir. 2014) (discussing law that "mandate[d] the ways in which Boeing renders services that the federal government hired Boeing to perform"); *United States v. City of Arcata*, 629 F.3d 986, 991 (9th Cir. 2010) (discussing law that restricted conduct of military recruiters).

Noncooperation policies do not burden the federal government or implicate inter-governmental immunity. *California*, 921 F.3d at 880–81 (rejecting application of *Boeing* or *City of Arcata* to "sanctuary" policies); *Illinois*, 796 F. Supp. 3d at 535 (rejecting application of *King County* to "sanctuary" policies).

Additionally, as discussed above, the Tenth Amendment protects Minnesota's choices to limit immigration enforcement cooperation. This applies equally to intergovernmental immunity claims. *See California*, 921 F.3d at 891; *Illinois*, 796 F. Supp. 3d at 536.

## CONCLUSION

This Court should dismiss all claims against the State Defendants with prejudice.

Dated:  February 20, 2026

Respectfully submitted,

KEITH ELLISON
Attorney General
State of Minnesota

*/s/ Brian S. Carter*
Brian S. Carter
Special Counsel
Atty. Reg. No. 0390613

Joseph R. Richie
Special Counsel
Atty. Reg. No. 0400615
Madeleine DeMeules
Assistant Attorney General

13

Atty. Reg. No. 0402648

445 Minnesota Street, Suite 600
St. Paul, Minnesota 55101-2125
(651) 300-7403 (Voice)
(651) 282-5832 (Fax)
Brian.Carter@ag.state.mn.us
Joseph.Richie@ag.state.mn.us
Madeleine.DeMeules@ag.state.mn.us

*Attorneys for Defendants State of Minnesota
and Minnesota Attorney General Keith Ellison*

|#6240907-v1

14