UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

St. Paul Division

| | |
|---|---|
| United States of America,<br><br>        Plaintiff,<br>v.<br><br>State of Minnesota; City of Minneapolis, Minnesota; City of St. Paul, Minnesota; Hennepin County, Minnesota; Keith Ellison, Attorney General of Minnesota, in His official capacity; Dawanna S. Witt, Hennepin County Sheriff, in her official Capacity,<br><br>        Defendants. | Court File No. 0:25-cv-03798<br><br>The Honorable Judge Eric C. Tostrud |

**REPLY IN SUPPORT OF CITY OF ST. PAUL, MINNESOTA'S MOTION TO DISMISS**

**ARGUMENT**

    **A. Defendant fails to establish standing for Counts One, Two, and Six as Directed Against Saint Paul.**

Plaintiff fundamentally misunderstands the relevant standing issues raised in Saint Paul's motion. As stated, the Complaint fails to establish the requisite traceability and redressability *as to Saint Paul specifically* regarding the specific claims raised in Counts One, Two, and Six. Those claims center on an AGO advisory opinion, the state constitution, and several state statutes directed towards the State Department of

1

Transportation. (*See* ECF 25 at 33–36.) For several reasons, Plaintiff's specious arguments fail to meaningfully address the relevant standing issues raised by Saint Paul, and the three corresponding Counts should therefore be dismissed with prejudice.

First, Plaintiff offers no substantive rebuttal as to its lack of standing against Saint Paul for Counts Two and Six, regarding state statutes. (*See* ECF 51 at 18–19 (addressing principally AGO advisory opinion and state constitution).) On that basis alone, Plaintiff has waived any argument in opposition to dismissal of those Counts. *See Hopper v. BMO Harris Bank, N.A.,* No. 22-cv-1828 (JRT/JFD), 2023 WL 4936160, at *3 (D. Minn. Aug. 2, 2023) ("Failure to respond to arguments in favor of dismissal may constitute waiver and abandonment, justifying dismissal on that basis alone.")

The claims also fail because challenged statutes do not address Saint Paul in any fashion, were not enacted or published by Saint Paul, and are not enforceable by Saint Paul. (*See* ECF 25 at 35–36.) Saint Paul has no control over the statutes, whether legislatively or as to enforceability, and Plaintiff offers no factual allegations to suggest otherwise. Counts Two and Six therefore lack the fundamental traceability required to establish Article III standing against Saint Paul and must be dismissed accordingly. *See Renollett v. State of Minnesota, Dep't of Educ.*, No. 03-cv-6452, 2004 WL 1576716, at *6 (D. Minn. July 13, 2004) (dismissing MDE because it had "no control and cannot legally influence" the challenged decisions). Similarly, Plaintiff fails to establish the requisite redressability against Saint Paul because it has no control over the challenged statutes and no ruling against Saint Paul would redress the alleged injuries arising from the statutes.

Second, Plaintiff raises two arguments regarding standing against Saint Paul for Count One, which is a facial challenge of a State AGO advisory opinion and the Minnesota State Constitution. (*See* Compl. ¶¶ 90–98.) Plaintiff first argues that Saint Paul should be liable for the actions of the State in relation to the subject AGO opinion and the Minnesota Constitution because Saint Paul is also a subsidiary of the State. Plaintiff cites no relevant case law for this novel proposition. Furthermore, Plaintiff's claim is a facial challenge against the opinion and the constitutional clause, and the Complaint offers no factual allegations regarding any alleged action or enforcement by Saint Paul relating to either text. (*See, generally*, Compl.) Plaintiff has no standing to seek an injunction against Saint Paul regarding an opinion that it is not responsible for and for a constitutional provision for which no factual allegations have been made against Saint Paul.

Plaintiff's second argument is that alleged injuries incurred due to Saint Paul's Separation Ordinance should somehow confer standing on wholly separate claims unrelated to the ordinance. Saint Paul does not dispute the standing regarding its own municipal ordinances, which are the subject of the Complaint's Count Four. Rather, Saint Paul's motion identifies the failure of the Complaint to raise any factual allegations that would suggest that Saint Paul is factually responsible for an AGO advisory opinion and constitutional provision it had nothing to do with enacting or enforcing. Neither the Complaint nor Plaintiff's supplemental declaration raise any specific factual allegations regarding Saint Paul in relation to the AGO opinion or the constitutional provision at issue. (*See, generally*, Compl.; Olson Decl.) Accordingly, Plaintiff fails to establish the requisite

elements of traceability and redressability for Count One of the Complaint as against Saint Paul and that claim should therefore be dismissed with prejudice as against Saint Paul.

### B. Separation Ordinance is not preempted by 8 § 287.7(d).

Contrary to Plaintiff's contentions, (ECF 51 at 23–24), Minnesota federal courts have plainly held that 8 C.F.R. § 287.7(d) does not impose a "mandatory" custody-transfer mechanism upon local municipalities, s*ee Garcia v. Speldrich*, No. , 2014 WL 3864493, at *12 (D. Minn. Aug. 6, 2014) (noting that local law-enforcement agencies receiving detainer requests under § 287.7 are "free to disregard the ICE detainer." (citing *Galarza v. Szalczyk*, 745 F.3d 634, 645 (3d Cir. 2014)). Plaintiff even concedes the issue, acknowledging that federal law does not compel state or local participation in immigration enforcement. (*See* ECF 51 at 26.)

As numerous other federal courts have recognized, the voluntary nature of ICE detainers under 8 C.F.R. § 287.7 is fatal to any preemption claim based on the same. *See, e.g., United States v. Illinois*, 796 F. Supp. 3d 494, 526–29 (N.D. Ill. 2025) (denying conflict preemption challenge based on § 287.7 due its voluntary nature for state entities); *United States v. New York*, ---F. Supp. 3d ----, 2025 WL 3205011, at *15 n.11 (N.D.N.Y. 2025) (citing § 287.7 as evidence of voluntary nature of INA provisions when dismissing conflict preemption claims based on INA). "Declining an option offered by a federal statute cannot create a conflict for preemption purposes." *Illinois*, 796 F. Supp. 3d at 529. Plaintiff has offered no countering authority or case law to dispute these clear holdings.

Instead, Plaintiff offers the unsupported argument that while states and municipalities are not required to cooperate under 287.7, they should still be preempted

from enacting any policies or ordinances that would effectuate their decision (as permitted under the statute) not to assist with ICE detainers or other actions under the INA. (*See* ECF 51 at 26–27.) This position borders on nonsensical and Plaintiff's brief citation to *Hines v. Davidowitz*, 312 U.S. 52 (1941), is unavailing. In that case, the state imposed extra regulations *on immigrants* which interfered with and obstructed Congress' exclusive power to regulate immigrants. Here, as courts have repeatedly recognized, the INA merely *invites* local assistance but does not require it. Saint Paul's decision to decline that invitation does not impede Congress' scheme of voluntary cooperation.

### C.  Separation Ordinance is not preempted by 8 U.S.C. § 1357(g)(1)

Plaintiff does not address Saint Paul's arguments that 8 U.S.C. § 1357(g)(1) lacks preemptive effect over the Separation Ordinance (specifically Chapter 44.02(a)(2) as alleged in the Complaint). (*See* ECF 25 at 15–17; ECF 51 at 28–32 (addressing only the AGO advisory opinion).) Plaintiff has therefore waived any argument under 8 U.S.C. § 1357(g) as to Saint Paul. *See Hopper*, 2023 WL 4936160, at *3. On that basis alone, Plaintiff's claims against Saint Paul based on 8 U.S.C. § 1357(g) should be dismissed with prejudice.

Further, the INA and 8 U.S.C. § 1357 specifically only entail voluntary cooperation by states and localities. (ECF 25 at 15–17.) The statutory scheme set forth by Congress expressly considers municipalities ability to *refuse* to participate in 1357(g) agreements, which is exactly what Saint Paul has done through its Separation Ordinance. Accordingly, there is no conflict with the objectives of Congress reflected in the INA. Because the statute directly considers the locality's ability to refuse cooperation, there is no conflict with the

statute when a locality chooses to exercise its right of refusal. As such, any arguments based on § 1357(g) would still fail on their face and must be dismissed with prejudice on that separate ground.

### D. Separation Ordinance is not preempted by 8 U.S.C. §§ 1373 and 1644.

8 U.S.C. §§ 1373 and 1644 do not preempt the Separation Ordinance, neither expressly nor through obstacle/conflict preemption.

First, as noted in Saint Paul's initial brief, Plaintiff has not raised any express preemption claim against Saint Paul or its Separation Ordinance, despite directing such claims against other Defendants. (ECF 25 at 23; *see also* Compl. ¶¶ 116–120.) While Saint Paul's initial brief addressed express preemption out of an abundance of caution, no such claim was actually raised in the Complaint. Having failed to raise the claim in the Complaint, Plaintiff cannot introduce such claim through its briefing. *See Fischer v. Minneapolis Public Schools*, 792 F.3d 985, 990 n.4 (8th Cir. 2015) (plaintiff cannot amend complaint through briefing).

Second, the Separation Ordinance's limitation on the collection of information unnecessary to city officer's work is not expressly preempted by the subject statutes because neither statute imposes any obligation or prohibition regarding the *collection* of information, only its communication with federal officers. (*See* 8 U.S.C. §§ 1373 and 1644.) The plain text of the statutes is clear, and where no ambiguity in the statutory language exists, the "judicial inquiry is complete." *Owner-Operator Ind. Drivers Ass'n, Inc. v. Supervalu, Inc.*, 651 F.3d 857, 862 (8th Cir. 2011).

Third, the Separation Ordinance does not conflict with the subject statutes because there is no prohibition on the communication of information with federal immigration entities. The plain language of the Separation Ordinance merely defines the scope of certain confidential information collected by officers and a generally applicable privacy provision for that information. There is no express preemption under the subject statutes because there is no express prohibition on communications with DHS beyond the general protections governing confidential information under the Ordinance.

### E.  Anticommandeering doctrine preclude Plaintiff's preemption claims.

Plaintiff argues that the anticommandeering doctrine does not preclude its preemption claims because it does not apply to conflict preemption and because the statutes do not regulate the state or its municipalities. (ECF 51 at 43–51.) However, the Supreme Court has held that "*every* form of [lawful] preemption is based on a federal law that regulates the conduct of private actors, not the States." *Murphy v. Nat'l Collegiate Athletic Ass'n*, 584 U.S. 453, 477 (2018) (emphasis added). Plaintiff attempts to argue that the subject statutes merely regulate aliens, not the states. But this argument is betrayed by the very language of the statutes themselves, which plainly direct their prohibitions to state and local policymakers, prohibiting them from issuing any policy or directive limiting communications with federal officials. (*See, e.g.,* 8 U.S.C. §§ 1373 and 1644.) Far from regulating private actors, the statutes "unequivocally dictate what a state legislature may or may not do" just as in the statute struck down in *Murphy*. *Id.* at 474. If there is "no way in which this provision can be understood as a regulation of private actors" and only

7

regulates local governments, it violates the anticommandeering doctrine. *Id.* at 479–80. Accordingly, they can have no preemptive effect and Plaintiff's claim fails.

### F. The Separation Ordinance Does Not Violate the Intergovernmental Immunity Doctrine.

The Separation Ordinance does not discriminate against the federal government. Nowhere in the Separation Ordinance is the federal government singled out for unfavorable treatment. Rather, as already articulated, the Ordinance provides a generally applicable data privacy provision for information collected by City officials and sets forth neutral directives focusing its law enforcement efforts away from civil immigration enforcement. Plaintiff's reliance on *North Dakota v. U.S.*, 495 U.S. 423 (1990) is misplaced, as the Court in that matter held that the challenged regulations did discriminate against the federal government. Indeed, as the Court noted in *North Dakota*, "[t]he State does not discriminate against the Federal Government and those with whom it deals unless it treats someone else better than it treats them." *Id.* at 438. Plaintiff pointedly refuses to identify any such comparator, because none exists. As such, their claim fails and must be dismissed.

Nor can it reasonably be said that Saint Paul's refusal to provide *voluntary* assistance imposes an affirmative burden like a tax or imposed legal liability. *See Illinois*, 796 F. Supp. 3d at 534 (collecting cases). There is no affirmative burden imposed on Plaintiff simply because Saint Paul has decided not to assist it. For that reason also, the intergovernmental immunity claim fails and must be dismissed.

|  |  |
|---|---|
|  | IRENE KAO<br>City Attorney |
| Dated: February 20, 2026 | */s/ Alexander Hsu*<br>Alexander Hsu, #0399275<br>Assistant City Attorney<br>750 City Hall and Court House<br>15 West Kellogg Boulevard<br>Saint Paul, MN 55102<br>651-266-8769<br>colin.laffey@ci.stpaul.mn.us<br><br>*Attorneys for Defendants City of Saint Paul, Minnesota* |